Charles HINES, Appellant,

v.

The STATE of Texas.

No. 1026–01.

Court of Criminal Appeals of Texas.

May 22, 2002.

R.P. Cornelius, Houston, for appellant.

Dan McCrory, Assist. DA, Houston, Matthew Paul, State's Attorney, Austin, for State.

## *OPINION*

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, J.J. joined.

A jury found appellant guilty of aggravated kidnapping. Punishment was assessed at twenty-seven years confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant argued on appeal that the evidence was legally insufficient to support the jury's verdict. The Court of Appeals reversed appellant's conviction. *Hines v. State*, 40 S.W.3d 705 (Tex.App.—Houston [14th District] 2001). We granted the State's petition for discretionary review to determine 1) whether the phrase "interfere substantially" as it appears in section 20.01 of the Texas Penal Code is ambiguous; and 2) whether the kidnapping statute can be applied to situations where slight confinement or movement is part of the commission of another offense. We will reverse the decision of the Court of Appeals.

## I.

The evidence at trial established that on the morning of June 29, 1998, Rebecca Thornton, an employee of the Klein Bank in Harris County, arrived at work early to open the bank. As she walked up to the front door of the bank two men who had been hiding behind some bushes ap-

proached her and stated, "That's right. Unlock the door." The men were wearing black clothing and ski masks. Thornton attempted to go inside the bank and lock the men out. One of the men stuck the barrel of a shotgun between the doors, used his hand to pry open the door, and grabbed Thornton by the throat. He then asked Thornton to show him the alarm pad. When the man noticed that Thornton was having difficulty disarming the alarm, he pointed the gun in her ribs and stated, "Do it now or I will shoot you. I swear to God." Thornton also testified that the man with the gun kept his hand around her throat for most of this time. After Thornton turned off the alarm, the man with the gun asked her to lead him to the vault. The other man served as the look-out.[1]

As she was turning on the light near the vault, another bank employee, Darlene Standlee, arrived at the bank. While one of the men held on tightly to Thornton's arm, Thornton was instructed by the men to signal Standlee to come inside the bank. Thornton, however, mouthed to Standlee not to enter the bank. Standlee was able to understand Thornton's warning and began to run away. The men then ran out of the bank after Standlee. Realizing that the men had exited the bank, Thornton left the bank to seek help.

Once outside the bank, the men ordered Standlee to stop. Standlee, fearing that the men were going to kill her, stopped. The men grabbed her by the back of the neck, pulled her back inside the bank, and demanded that she open the vault. As soon as the two men realized that Thorn-

---

1. Since both men were entirely covered by clothing, the only way in which Thornton could distinguish between the two men was by height. At trial, she described one man as "a really big stocky guy." She described the other man "as someone not so tall and stocky." She testified that the taller of the two men was the gunman and the one who was physical with her. It was never determined at trial whether or not appellant was the gunman. Since, however, appellant was charged under the law of parties, such identification is not relevant to the resolution of this point of error.

ton was no longer in the bank, they quickly left the bank, taking approximately $33,000 with them.

Appellant was subsequently charged with the aggravated kidnapping of Thornton.[2]

## II.

A person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense. TEX. PEN. CODE ANN. § 20.04(b)(Vernon 1994 & Supp. 2002).[3] "Abduct" means to restrain a person with the intent to prevent his liberation by either secreting or holding him in a place where he is not likely to be found, or using or threatening to use deadly force. TEX. PEN.CODE ANN. § 20.01(2)(Vernon 1994). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. TEX. PEN.CODE ANN. § 20.01(1). As is applicable to the present case, such restraint is without consent if it is accomplished by force, intimidation, or deception. TEX. PEN. CODE. ANN. § 20.01(1)(A).

Appellant argued on direct appeal that the evidence presented at trial was legally insufficient to establish an abduction. Identifying "restrain" as the operative word in the definition of "abduct," the Court of Appeals explained that it would have to determine the "meaning of restrain" before it could resolve appellant's legal sufficiency claim. In order to do this, the Court of Appeals concluded that it first had to determine the level of conduct necessary to constitute substantial interference. Having determined that the plain language of section 20.01(1) of the Texas Penal Code was ambiguous with regard to what constitutes substantial interference, the Court of Appeals looked to the Model Penal Code, notes and drafts of the Revision Committee of the Texas Penal Code, and New York courts for guidance. After taking these extra-textual factors into consideration, the Court of Appeals concluded that to "interfere substantially" means more than a "temporary confinement or slight movement which is part and parcel of the commission or attempted commission of another substantive criminal offense." *Hines,* 40 S.W.3d at 713–14. Applying this definition to appellant's case, the Court of Appeals found that appellant's conduct did not "interfere substantially" with Thornton's liberty. *Id.* at 714. Therefore, it held, the evidence was legally

**2.** Appellant was also convicted for the aggravated robbery of Standlee. The aggravated robbery case, however, is not at issue in this appeal.

**3.** In its entirety, section 20.04 of the Texas Penal Code provides:
(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:
(1) hold him for ransom or reward;
(2) use him as a shield or hostage;
(3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;
(4) inflict bodily injury on him or violate or abuse him sexually;
(5) terrorize him or a third person; or

(6) interfere with the performance of any governmental or political function.
(b) A person commits an offense if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense.
(c) Except as provided by Subsection (d), an offense under this section is a felony of the first degree.
(d) At the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

insufficient to prove aggravated kidnapping. *Id.*

In its petition, the State argues that since the language in the statute is unambiguous, the Court of Appeals should have focused on the plain language of the kidnapping statute instead of looking at the statute's legislative history and other extra-textual sources. Moreover, it contends that there is nothing on the face of the statute that would lend support to the Court of Appeals' conclusion that the kidnapping statute should not be applied to a situation where temporary confinement or slight movement of the victim is performed incidental to another substantive criminal offense.

▬ When discerning the meaning of a statute, the reviewing court should start its analysis by looking at the plain language of the statute in question. *Ex Parte Whiteside,* 12 S.W.3d 819, 821 (Tex.Crim. App.2000). If the statute is clear and unambiguous, the plain meaning of its words should be applied. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). If, however, the plain language of a statute would lead to absurd results that the legislature could not possibly have intended, or if the language is not plain but rather ambiguous, a court, in arriving at a sensible interpretation, may consider extra-textual factors such as executive or administrative interpretations of the statute or legislative history. *Id.* at 785–86.

In the present case, the Court of Appeals erred by resorting to extra-textual factors. Not only is the phrase "interfere substantially" unambiguous, but applica-tion of its plain meaning in the context of the kidnapping statute does not lead to absurd results. The phrase is one that in its common use does not generally have such an involved, complicated meaning as to require a defining thereof. *See Teer v. State,* 923 S.W.2d 11, 19 (Tex.Crim.App. 1996). It is clear that at the time of the statute's enactment, the Legislature intended for jurors to follow and apply the plain language of the phrase as it appears in the text. *See Boykin,* 818 S.W.2d at 785. Had the Legislature intended otherwise, it would have provided a specific definition as it did for the phrase "without consent" which is also found within the definition of "restrain" under section 20.01(1) of the Texas Penal Code.

▬ By resorting to extra-textual factors, the Court of Appeals reached the erroneous conclusion that to "interfere substantially" requires more than temporary confinement or slight movement that is part and parcel of the commission of another substantive offense. While the kidnapping statute in the Model Penal Code explicitly requires that an individual be removed a "substantial distance from the vicinity where he is found," or that he be confined for a "substantial period in a place of isolation," there is nothing in the Texas statute that even *suggests* that it is necessary for the State to prove that a defendant moved his victim a certain distance, or that he held him a specific length of time before he can be found guilty of kidnapping.[4] In fact, we have consistently held that under the kidnapping statute, there is no specific time requirement for determining whether a restraint has taken

---

4. Section 212.1 of the Model Penal Code provides:

A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a sub-stantial period in a place of isolation, with any of the following purposes:
(a) to hold for ransom or reward, or as a shield or hostage; or
(b) to facilitate commission of any felony or flight thereafter; or
(c) to inflict bodily injury on or to terrorize the victim or another; or

place. *See Santellan v. State,* 939 S.W.2d 155, 163 (Tex.Crim.App.1997); *Earhart v. State,* 823 S.W.2d 607, 618 (Tex.Crim.App. 1991), vacated and remanded on other grounds, 509 U.S. 917, 113 S.Ct. 3026, 125 L.Ed.2d 715 (1993); *Rogers v. State,* 687 S.W.2d 337, 342 (Tex.Crim.App.1985); *Sanders v. State,* 605 S.W.2d 612, 614 (Tex. Crim.App.1980).

■ There is also nothing in the statute indicating that the Legislature intended to bar the prosecution of a kidnapping that is part and parcel of another offense. Clearly the Legislature did not intend for every crime which involves a victim whose liberty has been interfered with to turn into a kidnapping. It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place. This can be established by looking· at all of the circumstances surrounding the offense. There is, however, no per se bar to a kidnapping prosecution for conduct that occurs during the commission of another offense.

### III.

Because the Court of Appeals incorrectly applied the meaning of the phrase "interfere substantially" to appellant's case, we must determine whether the evidence presented at trial was sufficient to sustain the verdict. On appeal, appellant specifically argued that the evidence at trial failed to establish that he had abducted Thornton. When resolving a legal sufficiency challenge, we view the evidence in the light most favorable to the prosecution in order to determine whether any rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is not to position itself as a thirteenth juror in assessing the evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Rather, it should act as a final, due process safeguard ensuring only the rationality of the factfinder. *Id.*

■ Viewed in the light favorable to the verdict, the evidence shows that appellant and another man hid in the bushes outside of the bank while waiting for the arrival of a bank employee. When Thornton arrived, they forced their way into the bank and threatened Thornton physically by pointing a gun at her and leading her around by the neck. Once she turned off the alarm, they led Thornton to another room and ordered her to open the vault. The men continued to maintain physical control over Thornton even after she was in the other room. It was not until Standlee's arrival that Thornton was able to escape. Looking at all of the evidence, we hold that a rational juror could have found that Thornton was abducted by appellant.

We reverse the judgment of the Court of Appeals and remand the case to that Court for consideration of appellant's other points of error.

JOHNSON, J., dissented.

---

(d) to interfere with the performance of any governmental or political function.

Kidnapping is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a felony of the second degree. A removal or confinement is unlawful within the meaning of this Section if it is accomplished by force, threat or deception, or, in the case of a person who is under the age of 14 or incompetent, if it is accomplished without the consent of a parent, guardian or other person responsible for general supervision of his welfare.